UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN L. TOLLIVER,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 07-cv-525-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on Petitioner John L. Tolliver's Motion Pursuant to Title 28 U.S.C. § 2255, seeking collateral relief from his conviction for conspiracy to distribute and possess with intent to distribute crack cocaine (Doc. 1). The Government has responded and Tolliver has replied. For the following reasons, the Court DENIES the Motion.

**BACKGROUND**

**I.    Procedural History**

On March 2, 2004, Tolliver and three co-defendants were indicted by a federal grand jury. The indictment alleged that Tolliver, Archie Dunklin, Jr., Houston O. Spiller and Jabrae D. Thomas conspired with each other and with persons known and unknown to the grand jury to knowingly distribute and possess with intent to distribute 50 grams or more of a mixture and substance containing cocaine base (crack cocaine). On December 7, 2004, after Spiller and Thomas pled guilty, a federal grand jury returned a superseding indictment against Tolliver and Dunklin. Reginald "Ray" Walls was an uncharged but named co-conspirator of Tolliver and Dunklin in the superseding indictment. On March 3, 2005, the government filed an "Information Pursuant to Title 21, United States Code, Section 851 to Establish Prior Conviction" with respect to Tolliver. That pleading established that Tolliver had a prior drug felony offense under 21

U.S.C. §851.

Tolliver and Dunklin were tried jointly. On March 23, 2005, after a three-day trial, a jury found both Tolliver and Dunklin guilty on Count 1 of the superseding indictment. With respect to each defendant, the jury made a special finding, beyond a reasonable doubt, that the amount of drugs attributable to each defendant was fifty (50) grams or more of crack cocaine. The United States Probation Office prepared a Presentence Report ("PSR") with respect to Tolliver. Tolliver filed objections to the PSR and the government responded.

On June 23, 2005, the district court sentenced Tolliver to 240 months' imprisonment, ten years' supervised release, a $250 fine, and a $100 special assessment. On June 28, 2005, Tolliver filed a notice of appeal. His appeal raised two issues: 1) whether the Court properly allowed the government's inquiry into Tolliver's 1991 sale of drugs to undercover police officers and related matters, and 2) whether the interplay between the jury instructions given at the trial and the indictment with respect to drug quantity caused confusion that resulted in an unfair trial.

The Seventh Circuit affirmed the conviction, finding that Tolliver's own testimony at trial that he had never dealt drugs opened the door for the prosecution to inquire into the 1991 transaction, notwithstanding that it would otherwise have been barred. The Seventh Circuit also found that the jury instructions as given were not confusing. The Court of Appeals issued its mandate on August 10, 2006. Tolliver did not file a petition for writ of certiorari to the United States Supreme Court, and his conviction became final on November 8, 2006. At trial and on appeal Tolliver was represented by attorney Daniel F. Goggin. Tolliver has filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, claiming that his counsel, Mr. Goggin, was constitutionally deficient and that the government committed acts of prosecutorial

misconduct.

## II. Facts

Reginald Walls, the named co-conspirator in the superseding indictment, testified that he had known Tolliver for ten to fifteen years. Between June 2002 and June 2003, Walls saw Tolliver on a daily basis. Walls testified that he and Tolliver went alone to St. Louis three or four times to purchase crack cocaine. Walls testified that when he and Tolliver traveled alone, they obtained between 6-12 grams on each occasion, but on one occasion they received an ounce of crack cocaine. Walls also testified that he, Tolliver, and other people (including Dunklin) went to St. Louis to get crack cocaine on 10 to 12 separate occasions. Walls said that they received a minimum of 6 grams on each occasion. Walls further stated that Tolliver also went to St. Louis without Walls being present. Walls indicated that Tolliver would go to St. Louis with Greg Woods, Kenny Tyner, and Dunklin for the purpose of obtaining crack cocaine. During these trips, the individuals would put their money together to obtain the crack cocaine. When they returned from St. Louis with the crack cocaine, Walls and Tolliver would repackage the crack cocaine into smaller quantities for resale. Tolliver and Walls would then sell some of the crack cocaine to regular customers.

Walls also described a time he and Tolliver stole crack cocaine from another drug dealer named Sedric Anderson. Walls then testified that he and Dunklin went alone to St. Louis 10-15 times to purchase crack cocaine. Walls testified that when he and Dunklin traveled alone, they obtained between one-half ounce and one ounce of crack cocaine on each occasion. Walls also stated that Mindy Smith, Tolliver, and Dunklin's girlfriend also accompanied them to St. Louis at various times.

Kenny Tyner testified that he went to St. Louis with Walls and Tolliver on two occasions for the purpose of obtaining crack cocaine. Tyner also purchased crack cocaine from Tolliver on one occasion, and smoked crack cocaine with Tolliver on other occasions. Greg Woods testified that he and Tolliver went alone to St. Louis six times to purchase crack cocaine. Woods testified that when he and Tolliver traveled alone, they obtained a quarter ounce of crack cocaine on each occasion. Woods also testified that he, Tolliver, and other people (Walls, Tyner, and John Melvin) went to St. Louis to get crack cocaine on three to five separate occasions. Woods saw Tolliver repackaging the crack cocaine for resale and saw Tolliver sell crack cocaine to others. Woods saw Tolliver sell crack cocaine to Kenny Tyner, John Melvin, Rita McGuire, Angie Harlan, Wyatt Scruggs and Stacy Quinn. Woods also indicated that he would get crack cocaine from Dunklin two to three times per week.

Sedric Anderson testified that from April to June 2003, he knew Dunklin and Tolliver. Anderson sold crack cocaine to Tolliver during this time frame, with the largest amount being one-half ounce. Anderson also stated that Walls and Tolliver stole 37-40 grams of crack cocaine belonging to Anderson. Anderson testified that between April and June 2003, he sold Dunklin one-half ounces of crack cocaine on several occasions. Anderson and Dunklin also went to Memphis, Tennessee, where they purchased six ounces of powder cocaine which they brought back to DuQuoin, Illinois. Anderson and Dunklin then processed the six ounces of powder cocaine into six ounces of crack cocaine.

Jeanne Fisher testified that back in 2000 and 2001, she went to St. Louis with Tolliver and Walls when they went to purchase crack cocaine. Fisher also testified that on May 1, 2003, she made a controlled purchase of crack cocaine from a person named Lorenzo Bolling. Tolliver

4

aided Fisher in obtaining the crack cocaine from Bolling. This transaction was recorded and surveilled by law enforcement.

Mindy Smith testified that between the fall of 2002 to June 2003, she, Tolliver, and Walls went to St. Louis three to five times for the purpose of purchasing crack cocaine. Smith also said she went to St. Louis with Walls and Dunklin on one occasion to purchase crack cocaine. Two individuals also testified that they had purchased crack cocaine from Tolliver. Angie Harlan testified that in the beginning of 2003, she obtained crack cocaine from Tolliver on ten occasions. Stacy Quinn testified that she and her boyfriend Wyatt Scruggs obtained crack cocaine from Dunklin and Tolliver.

Tolliver later testified on his own behalf. Among other things, Tolliver testified on direct examination that he was not "in that class of people" who sell or deal or conspire to deal in cocaine., and that he had "no reason to sell crack. I worked all my life." Tolliver said it was "not my bag to sell no drugs."

On cross-examination, and in response to Tolliver's denial of drug dealing on direct examination, the government asked Tolliver about some of his prior acts of drug dealing, including whether Tolliver had sold marijuana joints laced with crack cocaine, whether Tolliver had traveled with Walls to East St. Louis to purchase crack cocaine, and whether Tolliver had been convicted of selling drugs. Again, Tolliver denied much of this.

In rebuttal, the government introduced evidence through retired DuQuoin Police Officer Gary Darnell. Darnell stated that on December 31, 1991, law enforcement officers made a controlled purchase from Tolliver of four marijuana cigarettes laced with crack cocaine. Further, on March 31, 1992, Darnell asked Tolliver about his involvement in drugs at that time. Tolliver

told Darnell that he (Tolliver) wasn't a big-time drug dealer, but that he had handled small amounts of drugs. Tolliver also indicated that he could get crack cocaine from Ray Walls, and that he went with Ray Walls to East St. Louis and brought back an ounce of crack cocaine one time.

Tolliver asserts that the Court should grant him collateral relief the grounds that his trial counsel, Daniel Goggin, was ineffective. Tolliver specifically alleges that Goggin was ineffective because he: (1) failed to argue that the evidence was insufficient to support a single conspiracy theory; (2) failed to effectively challenge the voir dire process; (3) failed to request a hearing pursuant to Fed. R. Evid. 801(d)(2)(E); (4) failed to argue variance between the indictment and the proof at trial; (5) failed to use favorable impeaching evidence and failed to disclose favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (6) failed to challenge the government's improper use of prior bad acts under Fed R. Evid. 404(b). Tolliver also alleges that the government may have committed "grand jury fraud" and concealed facts that show that his prior state court conviction was unconstitutional.

## ANALYSIS

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). It is proper to deny a § 2255 motion

6

without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255

## I. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain*, 211 F.3d at 434. The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning

7

quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694). "A mere possibility of prejudice does not qualify as actual prejudice." *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996). In evaluating these issues this Court must keep in mind that "the ultimate objective [of our legal system is] that the guilty be convicted and the innocent go free." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996) (citation omitted). Finally, the Court need not evaluate both prongs of the *Strickland* test; "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 697).

### A. Sufficiency of Evidence

Tolliver complains that his counsel was constitutionally deficient for failing to argue that the evidence presented at trial was insufficient to support a conviction of the charged conspiracy. Alternatively, he complains that his counsel should have argued that there was a fatal variance between the conspiracy as charged and the conspiracy as alleged in the superseding indictment. These two claims will be analyzed together, as "[a] conspiracy variance claim is a challenge to the sufficiency of the evidence." *U.S. v. Womak*, 496 F.3d 791, 794 (7th Cir. 2007).

Tolliver's contention seems to be that his trial counsel should have moved for a judgment

of acquittal. A court should grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction" for the offenses charged. Fed. R. Crim. P. 29(a). The Court may grant the motion only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. In other words, a court should grant the motion only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, a motion for a judgment of acquittal would necessarily have failed.

The Government presented overwhelming evidence in the form of testimony from named co-conspirator Walls, as well as testimony from Kenny Tyner, Greg Woods, Sedric Anderson, Mindy Smith, Angie Harlan and Stacy Quinn, from which a reasonable jury could conclude that Tolliver was an active participant in the conspiracy charged in the indictment. Contrary to what Tolliver appears to believe, the Government was not required to prove that Tolliver was Dunklin's partner in the charged conspiracy, only that Tolliver or Dunklin or both of them were participants in the conspiracy with others known and unknown to the grand jury. Walls's testimony alone was sufficient evidence from which a jury could reasonably have convicted Tolliver of the charged conspiracy. As such, any motion for a judgment of acquittal would have been denied. Therefore, Tolliver cannot show that he was prejudiced by his counsel's failure to ask for a judgment of acquittal.

**B.  Jury Voir Dire**

Tolliver also alleges Mr. Goggin was ineffective because he failed to challenge jurors

who expressed a bias in favor of government witnesses. One potential juror stated she knew Roger Ehlers and went to church with him. There was also another potential juror who said he knew Sheriff Kellerman. A third potential juror stated she knew Officer Mike Plumlee and would "believe everything" he said.

Tolliver's counsel and counsel for co-defendant Dunklin informed the Court that they had consulted together as to which potential jurors they wished to challenge for cause and on which they would exercise their peremptory strikes. None of above potential jurors were ever seated on the jury, because the Court granted counsel for co-defendant Dunklin's challenges for cause on those jurors. Accordingly, Tolliver cannot establish that he was prejudiced from the fact that Mr. Goggin did not challenge those potential jurors.

One potential juror, Diane Craig, informed the Court that she knew a potential government witness. The Court inquired as to whether Craig could weigh that witness's testimony the same way she would any other witness. Craig answered, "Yes, I believe so." The Court refused defense counsel's request to strike her for cause, because she had informed the Court that she could be fair and impartial. Tolliver's counsel did not use one of his peremptory strikes on Craig, and she was ultimately seated on the jury. Tolliver complains that his counsel neither asked for Craig to be stricken for cause, nor used a peremptory strike to avoid having her seated on the jury.

Mr. Goggin and co-defendant Dunklin's counsel informed the Court they had consulted with each other. Dunklin's counsel did the talking for both of them. Dunklin's counsel asked the Court strike Craig for cause; the Court refused. Mr. Goggin was under no obligation to ask again for something the Court had already refused. Tolliver also complains that Mr. Goggin

should have peremptorily stricken Craig. However, the decision of when to use a peremptory strike lies firmly within the realm of "strategic choices" that the Court will not second guess on collateral review. *See Harris v. Reed*, 894 F.2d 871, 877.

The Court has also considered the list of questions, submitted by Tolliver in his reply brief, that Tolliver believes his counsel should have asked of the venire. Most had already been asked of the venire by the Court. Many are immaterial or offputting. The Court would not have allowed Tolliver's counsel to ask most of the questions. Furthermore, the chances are great that questioning potential jurors so fiercely would have alienated them. Mr. Goggin exercised his professional judgment sensibly when he declined to do so.

### C. Failure to Request a *Santiago* Hearing

In *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir. 1978)(overruled on other grounds by *Bourjaily v. United States*, 483 U.S. 171 (1987)), the Seventh Circuit concluded that "if it is more likely than not that the declarant and the defendant were members of a conspiracy when [a] hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible" under Federal Rule of Evidence 801(d)(2)(E). Tolliver's entire argument on this issue is premised on the mistaken belief that if a defendant gives a statement or confession in which he repeats the hearsay statements, that somehow negates *Santiago* and renders the hearsay statements inadmissible at a later trial. It does not. Therefore, Tolliver's counsel was not ineffective for failing to raise such an argument.

### D. Failure to Use Favorable Impeaching Evidence

Tolliver also claims that his trial counsel was ineffective because he failed to offer into evidence the proffer statements and written interview reports of several critical government

witnesses. However, the proffer statements and interview reports are inadmissible hearsay, therefore Tolliver cannot possibly establish either *Strickland* prong with respect to this claim. *See* Fed. R. Evid. 803(8)(B); *United States v. Wyatt*, 437 F.2d 1168, 1170 (7th Cir. 1971).

Tolliver also complains that his trial counsel failed to procure the reports of interviews of Rita McQuire, Connie Baxter, Vickie Baxter, Anthony Spiller and Donald Myers. Of these individuals, only McQuire testified at trial. Thus, any reports of interviews of Baxter, Baxter, Spiller and Myers, even if they existed, were not subject to disclosure under the Jenks Act. *See* 18 U.S.C. § 3500. Furthermore, McQuire's testimony implicated only Tolliver's co-defendant, Archie Dunklin, in criminal activities. Accordingly, Tolliver cannot demonstrate any prejudice in trial counsel's failure to obtain any statement McQuire may have made.

Tolliver also seems to be under the mistaken impression that his trial counsel is required by *Brady v. Maryland*, 373 U.S. 83 (1963), to "disclose" favorable evidence to the jury. *Brady* requires the prosecution to disclose exculpatory evidence to the defense. *Brady* does not govern how defense counsel should proceed, nor does it displace the Federal Rules of Evidence, which, as noted above, prohibit the entry into evidence of the proffer statements and interview reports because they are inadmissible hearsay.

### E. Failure to Object to 404(b) Evidence

Tolliver's argument that his counsel was ineffective for failing to object to the admission of prior bad acts is belied by the record. In fact, his trial counsel did object to the entry into evidence of Tolliver's prior conviction, but his objection was overruled on the grounds that Tolliver's direct testimony had opened the door to its admission. Tolliver's counsel raised the issue on direct appeal, but the Seventh Circuit affirmed this Court's decision to admit the

12

evidence. Therefore, Tolliver can point to nothing his counsel failed to do on this issue.

F.     **Prosecutorial Misconduct**

Finally, Tolliver makes some vague and unsupported allegations of prosecutorial misconduct. He alleges that, because the original indictment against him was superseded, the government may have committed "grand jury fraud." He also makes vague unsupported allegations that the government concealed facts that show his prior state court conviction was unconstitutional. Suspicions about grand conspiracies against him and conclusory allegations do not suffice to sustain a § 2255 claim. *See Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996).

## CONCLUSION

As the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief, the Court **DENIES** Tolliver's Motion Pursuant to Title 28 U.S.C. § 2255 (Doc. 1) The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: May 15, 2009**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**